UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:23-cv-00279

**Marisol Almanza et al.,**
*Plaintiffs,*
v.
**T.A. Jenkins et al.,**
*Defendants.*

## OPINION AND ORDER

In this civil-rights case, plaintiffs allege that the police-officer defendants violated their Fourth Amendment rights by seizing the plaintiffs and searching their home after finding what the officers believed was the same white Ford Expedition that fled a shooting at a nearby park. Doc. 10 at 4. It is undisputed that the officers took those actions without a warrant. But the Fourth Amendment question is whether a search or seizure is "unreasonable," U.S. Const. amend. IV—and that test allows a warrantless search or seizure in some circumstances. Moreover, the officers are entitled to qualified immunity unless the unlawfulness of their actions is clearly established by binding case law.

The officers moved to dismiss the complaint based on those principles, Doc. 46, and the reviewing magistrate judge recommended granting the motion, Doc. 55. Plaintiffs filed objections, and defendants responded. Docs. 60, 61. The court reviews the objections de novo. As to the magistrate judge's findings and recommendations not subject to an objection, the court finds no clear error and accepts them.

**1.** The court adopts the magistrate judge's recitation of the factual background on which the motion for summary judgment is decided. Doc. 55 at 1–6. Only an overview is provided here:

On an August night in Tyler, around 9 p.m., a teenager was shot at a public park. Witnesses reported that the suspects were three Hispanic males, two in white shirts and one in a darker-

colored shirt. Witnesses described the shooters getting out of a white Ford Expedition with a sticker on the rear window, shooting into a crowd on the basketball court, and then running north while the vehicle continued south. Shortly before the shooting, a white Ford Expedition with a sticker on the rear window aggressively evaded an attempted traffic stop by the Tyler Police Department.

About half an hour after the shooting, an unidentified individual, who heard about the shooting on a police scanner, called 911 to report seeing a white Ford Expedition with a sticker on it and gave its license-plate number. In searching for the car, officers visited a house that the police considered a problem house not far from where the caller reported the sighting.

In the driveway, the officers saw a white Expedition with the reported license plate. The officers also saw several Hispanic males going in and out of the house to another car in the driveway, suggesting preparation to leave in the other car.

The officers, with guns drawn, approached the house and ordered its occupants to exit. Ten individuals in total exited: three teenage or young-adult males ("the suspects"), an older male, an older female, and five children. Two of three suspects were wearing white shirts, and the third suspect was wearing a red shirt. The officers handcuffed the three suspects and then entered and swept the house. One officer opened a kitchen cabinet door but did not remove anything. The house sweep lasted around two minutes.

The officers handcuffed the three suspects and brought them to the police station for questioning. The other occupants ("the non-suspects") were told that they were free to wait at the station or elsewhere but could not enter the house while a search warrant was being sought. The older adults consented to a search of the house and the Expedition, but no evidence of the shooting was found. Those occupants waited outside for around three hours.

The police then determined that the sticker on the rear window of the Expedition at the house did not match the sticker on the vehicle that evaded the traffic stop and that the three suspects were likely not involved in the shooting. They were released.

**2.** Plaintiffs sue under 42 U.S.C. § 1983, alleging that their house was searched and their persons were seized unreasonably, in violation of the Fourth Amendment as incorporated against state actors. The magistrate judge recommended dismissing the claims because reasonable suspicion of criminal activity allowed the non-suspect plaintiffs to be detained outside the house, for police to investigate the suspected crime and ensure their safety, and because probable cause allowed the three suspect plaintiffs to be arrested and a protective house sweep performed. Doc. 55.

Plaintiffs first object to the magistrate judge's reasonable-suspicion conclusion as to the detention of the non-suspect plaintiffs. Doc. 60 at 1–4. Plaintiffs argue that the officers acted on an unreliable anonymous tip, that at least fact issues exist as to the tip's reliability, that some witness accounts of the shooting described the vehicle as a white Chevrolet Tahoe or Ford Explorer as opposed to a Ford Expedition (all SUVs), that the sticker on the Expedition at the house did not match the sticker on the Expedition that evaded an attempted police stop earlier that night, and that the officers' characterization of the house as a problem house, drug house, or gang house was based on hearsay and insufficient collective knowledge. *Id.* Plaintiffs also summarily state that distinct "concerns" are raised by the fact that some of the non-suspect plaintiffs were minors, *id.* at 7, but that concept is not developed and is forfeited as an objection by insufficient briefing.

Plaintiffs then object to the magistrate judge's probable-cause conclusion as to the arrest of the three suspect plaintiffs, arguing essentially the same deficiencies urged as to the reasonable-suspicion conclusion. *Id.* at 4–5.

Finally, plaintiffs object that the officer's warrantless entry of the house was not limited to a safety sweep for a danger to the officers and was unsupported by any other exception to the general warrant requirement for a house search. *Id.* at 5–7.

**a.** Even viewing disputed facts in the light most favorable to plaintiffs, the defendant officers had not just reasonable suspicion but probable cause to believe that the vehicle and suspects at the

East Gold Street residence were involved in the shooting, or at the least plaintiffs point to no clearly established case law on similar facts defeating that conclusion and thus precluding qualified immunity. At the time of the arrest, the officers knew:

- Several witness reports described the vehicle involved in the shooting as a white SUV, including as a white Expedition. The vehicle at the house was a white Expedition.
- Witness testimony described the suspected shooters as three Hispanic males, two wearing white shirts and one wearing a darker-colored shirt. The suspect plaintiffs at the house were three Hispanic males, two wearing white shirts and one wearing a red shirt, which is darker than a white shirt.
- Shortly before the shooting, a white Expedition with dark, tinted windows and a sticker on the rear window had aggressively evaded an attempted traffic stop by the Tyler Police Department. The vehicle at the house was a white Expedition with a sticker on the rear window.
- About half an hour after the shooting, the police received an anonymous 911 call from an individual who reported seeing a white Expedition with dark, tinted windows driving in an area of Tyler not far from the house and heading east, in the direction of the house.
- As to the factors for witness reliability, the caller asserted eyewitness sighting of the car, reported it contemporaneously, used the 911 system which permits call tracing, and provided specific license-plate and direction information. The matching car was found at the house a few miles east. And the witnesses from the park likewise witnessed events there and reported contemporaneously.
- All of this occurred shortly before and after the shooting.

Considering the totality of the circumstances, and even putting aside the "problem house" evidence, the officers made an entirely reasonable inference that the three suspect plaintiffs and

the white Expedition at the house were the three reported suspects and the white SUV from the shooting, or at the least plaintiffs have failed to identify any binding case law making that conclusion clearly disestablished for purposes of qualified immunity. *See, e.g.*, *United States v. Allen*, 235 F.3d 482, 488 (10th Cir. 2000) (finding probable cause where police encountered an individual and a vehicle matching description of tip). The fact that discrepancies later arose regarding the vehicle sticker or model and that the suspect plaintiffs later provided information placing them in locations away from the shooting means that, in hindsight and with the benefit of time, the officers' information was imperfect. "But the Fourth Amendment doesn't require perfection, only probable cause." *United States v. Martin*, 613 F.3d 1295, 1303 (10th Cir. 2010) (Gorsuch, J.). Plaintiffs' objections to the recommended dismissal of their unlawful-detention claims are thus overruled.

Plaintiffs do not object to the recommended disposition of their unlawful-detention claims on any basis other than the absence of the requisite degree of suspicion. To the extent that the pleadings even include the separate issue of the extent of the restriction of the non-suspect plaintiffs' liberty, the court finds no clear error in the magistrate judge's recommendation to dismiss based on qualified immunity. The non-suspect plaintiffs were not handcuffed, kept in a police car, detained at the police station, or restricted in their liberty any more than necessary, or at the least plaintiffs point to no binding case law clearly establishing that any restrictions on their liberty violated their rights.

**b.** A house search generally requires a warrant, which must issue only on probable cause. But a warrantless house search is also constitutionally reasonable in some circumstances. One such circumstance is defined by the protective-sweep doctrine, which "allows government agents, without a warrant, to conduct a quick and limited search of premises for the safety of the agents and others present at the scene." *United States v. Mendez*, 431 F.3d

420, 428 (5th Cir. 2005). Officers may lawfully conduct a protective sweep where:

> (1) "the police [have not] entered (or remained in) the home illegally and their presence within it [is] for a legitimate law enforcement purpose;" (2) "the protective sweep [is] supported by a reasonable, articulable suspicion . . . that the area to be swept harbors an individual posing a danger to those on the scene;" (3) "the legitimate protective sweep [is not] a full search but [is] no more than a cursory inspection of those spaces where a person may be found;" and (4) the duration of the protective sweep, first, "last[s] no longer than is necessary to dispel the reasonable suspicion of danger," and, second, "last[s] no longer than the police are justified in remaining on the premises."

*United States v. Turner*, 125 F.4th 693, 708–09 (5th Cir. 2025) (citations omitted).

The officers were responding to a shooting, and the suspects had not furnished the gun involved in the shooting. Thus, the officers permissibly ensured that there were no armed and dangerous individuals in the house. *See United States v. Rico*, 51 F.3d 495, 501 (5th Cir. 1995) (finding that officers permissibly conducted protective sweep of house after arresting a suspect in the driveway). The sweep was not longer than necessary, lasting around two minutes. *See Turner*, 125 F.4th at 709 (finding one-and-a-half-minute sweep of apartment was reasonable); *United States v. Hann*, 38 F.3d 570 (5th Cir. 1994) (unpublished) (finding two-to-three-minute sweep of apartment was justified). At the least, it was not clearly established in binding case law that the sweep was unauthorized on the specific facts here.

Plaintiffs object that the sweep was unconstitutional because Officer Tilton opened a cabinet door during the sweep. As the officers cleared the house, Tilton opened a kitchen cabinet door that had a glass panel. Tilton did not remove anything from the cabinet and moved on. Even assuming that plaintiffs properly raised this

claim in their complaint,[1] Tilton's conduct was not a clearly established violation of the Fourth Amendment. The house-clearing was still in process, and the gun from the park shooting had not yet been recovered by the police. *See Mora v. City of Gaithersburg*, 519 F.3d 216, 226 (4th Cir. 2008) (protective search "was part and parcel of defusing the threat"); *Fishbein ex rel. Fishbein v. City of Glenwood Springs*, 469 F.3d 957, 961 (10th Cir. 2006) (officers' five-minute protective sweep to ensure there were no armed and dangerous persons "lurking on the premises" did not violate Fourth Amendment). Plaintiffs' final objection is thus overruled.

* * *

The court accepts the report, adopts its recommendation, grants the motion for summary judgment (Doc. 46), and dismisses this action with prejudice.

*So ordered by the court on November 13, 2026.*

J. Campbell Barker
United States District Judge

[1] Plaintiffs did not allege in their amended complaint that Tilton committed an unconstitutional search. The first time they raised the allegation was in their response to defendants' motion for summary judgment. *See* Doc. 51 at 9.